**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| James K. Trueman, | ) | |
| | ) | |
| Plaintiff, | ) | No. CIV 09-2179-PHX-RCB(DKD) |
| | ) | |
| vs. | ) | O R D E R |
| | ) | |
| Jason Johnson, Unknown Avena, and Unknown Molina, | ) ) | |
| | ) | |
| Defendants. | ) | |

### *Introduction*

Plaintiff James K. Trueman is confined in the Saguaro Correctional Center ("SCC"), a Corrections Corporation of America ("CCA") facility in Eloy, Arizona. This matter arises following the court's review of plaintiff's *pro se* civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff has yet to serve the remaining defendants, Unknown Avena, Jason Johnson and Unknown Molina,[1] with the first amended complaint ("FAC"). Nonetheless, as

---

[1] As the caption now accurately reflects, all other defendants have been terminated from this action.

Fed. R. Civ. P. 4(m) permits, for the reasons set forth below, the court grants plaintiff one final opportunity to serve those defendants.

### ***Background***

Plaintiff alleges that on December 6, 2007, he sustained back injuries when he slipped on "wet linoleum floor" in the facility dining hall. Amend. Co. (Doc. 17) at 3, ¶ 3. Plaintiff timely filed his original complaint on September 22, 2009, which this court dismissed albeit with leave to amend. Ord. (Doc. 11). On August 16, 2010, plaintiff filed his FAC. Thereafter, on October 4, 2010, this court, among other things, ordered unserved defendants Avena, Johnson, and Molina to answer count II of the FAC. Additionally, under the terms of that order, plaintiff had until approximately December 20, 2010, at the latest, by which to obtain a waiver of service or complete service upon those three defendants. See Ord. (Doc. 18) at 6, ¶ (5).

Complying with that order, plaintiff timely returned the service packets to the Clerk's Office for service by the United States Marshals Service. On each of the United States Marshal Service forms ("USM-285 forms") plaintiff named the defendant to be served, indicated that they should be served at the SCC, and provided the facility address. See Docs. 19, 20, and 21. On December 2, 2010, the three USM-285 forms were returned as unexecuted; and each had the same notation: "11/29/2010 - Moved to RS[;] 11/30/10 - Spoke with Tracy Thompson (Warden Secret[a]ry), she stated [Avena/Molina/Johnson] no longer works at [SCC] facility." Id. Docs. 19, 20, and 21.

Because it was "unclear" as to whether any of these defendants

had "been transferred to another facility[,]" United States Magistrate Judge David K. Duncan "required . . . defense counsel . . . to advise the court and Plaintiff regarding this matter." Ord. (Doc. 22) at 1:17-208. The Magistrate Judge further ordered defendants to notify plaintiff if they "are still employed with the ADOC [Arizona Department of Corrections][.]" Id. at 1:20. Finally, he granted plaintiff an extension of time until February 16, 2011, in which to complete service. Id. at 2:, ¶ 2.

Plaintiff then moved to compel the provision of defendants' names and addresses. Mot. (Doc. 23). Because it did not appear that an attorney of record had entered an appearance for defendants, the Magistrate Judge ordered the law firm of Jones Skelton & Hochuli (the "Jones firm"), which "routinely represents . . . [CCA] and [its] employees[,]" to provide plaintiff, under seal, with defendants' "work . . . or home addresses[.]" Ord. (Doc. 24) at 1:20-23; 2:4-5.

On February 4, 2011, the Jones firm "advis[ed] that Defendants are not and were not employees of CCA." Not. (Doc. 25) at 1:24-25; 2:4-5. The Jones firm did advise, however, that defendants "are or were employees of an entity called Canteen Correctional Services, which contracted with CCA to provide canteen serves at CCA's Saguaro Correctional Center during times relevant to Plaintiff's Complaint." Id. at 1:25-28. The Jones firm also provided the address for Canteen Correctional Services' parent corporation in Charlotte, North Carolina. Id. at 2:1-5. On February 4, 2011, the Jones firm also mailed a copy of that notice to plaintiff. Id. at 2:15-19.

In accordance with the Magistrate Judge's order, plaintiff

1  "ha[d] fourteen (14) days to return the service packets[]" to the
2  Clerk's Office for service. Ord. (Doc. 24) at 5-6. Because
3  plaintiff received a copy of that notice via mail, he had until
4  February 22, 2011, by which to return the completed service packet
5  to the Clerk's Office. Plaintiff was a week late; the Clerk's
6  Office received his service packets on March 1, 2011. Doc. (March
7  1, 2011). Plaintiff did name the defendant to be served on each
8  USM-285, but he did not provide an address for any of them. See
9  Docs. 26, 27 and 28.

About four and a half months later, on July 21, 2011, those service packets were all returned as unexecuted. Those USM-285 forms uniformly indicate that the server "spoke" with a "manager at Canteen Corrections who stated subject no longer works there" and the forwarding addresses were "unknown." Id.

Based upon this series of events, on August 1, 2011, the Magistrate Judge noted that it had "been nearly a year and Defendants ha[d] not been served. OSC (Doc. 29 at 2:12). Consequently, he ordered that "Plaintiff shall have thirty (30) days from [that date] to show good cause why this case should not be dismissed pursuant to LRCiv 41.1, . . . , for want of prosecution and Rule 4(m), Fed.R.Civ.P." Id. at 2:16-19. That OSC concluded: "If Plaintiff fails to comply with this Order, this action shall be dismissed." Id. at 2:2:19-20.

Although plaintiff did not directly respond to that OSC prior to the August 31, 2011 deadline, on August 16, 2011, he did file a "Motion for Leave to Amend, and Stay of Execution for Cour[t]'s Order to Show Cause[.]" Pl.'s Mot. (Doc. 30) at 1. Based upon his "belief" that defendants "still reside[] in the State of

Arizona[,]" plaintiff "request[ed]" that the court not . . . dismiss his complaint for lac[k] of service against the defendants." Id. On October 26, 2011, the Magistrate Judge denied plaintiff's motion in its entirety. Ord. (Doc. 31) at 1:22-23.

### *Discussion*

Upon its *sua sponte* review of this case, and with notice having been given to plaintiff by the Magistrate Judge's OSC, the issue is whether or not to grant plaintiff an extension of time to serve defendants pursuant to Fed.R.Civ.P. 4(m). "A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Fed.R.Civ.P. 4." Travelers Cas. & Sur. Co. of Am. v. Brenneke, 551 F.3d 1183, 1135 (9th Cir. 2009) (internal quotation marks and citations omitted). Rule (m) specifically provides in relevant part that:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff - must dismiss the action without prejudice against the defendants or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m). This "deadline for service is designed to force parties and their attorneys to be diligent in prosecuting their cause of action." Golf Savings Bank v. Walsh, 2010 WL 3222112, at *2 (D.Or. Aug. 13, 2010) (citing, *inter alia*, Fimbres v. United States, 833 F.2d 138, 139 (9th Cir. 1987)).

There are "two avenues for relief[]" under Rule 4(m). Lemoge v. United States, 587 F.3d 1188, 1198 (9th Cir. 2009). "The first is mandatory[.]" Id. (citation and footnote omitted). Based upon the plain language of that Rule, "the district court must extend

1  time for service upon a showing of good cause." <u>Id.</u> (citation and
2  footnote omitted). "The second is discretionary[.]" <u>Id.</u> (citation
3  omitted). Notwithstanding Rule 4(m), "if good cause is not
4  established, the district court may extend time for service upon a
5  showing of excusable neglect." <u>Id.</u> (citation omitted).

Engaging in the "two-step analysis" which the Ninth Circuit "requires[,]" the court will first consider whether on this record there is good cause, thus mandating an extension of time for service under Rule 4(m). <u>See</u> <u>In re Sheehan</u>, 253 F.3d at 512. Courts must determine whether good cause "has been shown on a case by case basis." <u>Id.</u> (citation omitted).

### *I. Mandatory Extension of Time*

"Good cause to avoid dismissal may be demonstrated by establishing, *at minimum*, excusable neglect." <u>Lemoge</u>, 587 F.3d at 1198, n. 3 (citation omitted) (emphasis added). For the moment, the court will assume *arguendo* the existence of excusable neglect. Based upon that assumption, now it will address the other factors "a plaintiff may be required to show . . . to bring the excuse to the level of good cause:

> (1) the party to be served personally received actual notice of the lawsuit; (b) the defendant would suffer no prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.

<u>Lemoge</u>, 587 F.3d at 1198.

#### *A. Actual Notice*

It is undisputed that none of the three remaining defendants have "personally received actual notice of th[is] lawsuit" in that they have not been served with process. <u>See</u> <u>id.</u> Evidently defendants also have not "personally received actual notice of

th[is] lawsuit" by any means, as they have never appeared or in any way contacted the court. See id. Therefore, the actual notice factor does not support a finding of good cause.

### B. *No Prejudice to Defendants*

In contrast, the seeming lack of prejudice to defendants weighs in favor of a finding of good cause. "[W]hile the Lemoge court described good cause and excusable neglect as two distinct standards, it also indicated that the two standards overlap." Golf Savings, 2010 WL 3222112, at *3. Given that "overlap" and the "conflation" of those two legal standards[,]" id., although the court now is evaluating good cause, it will look to case law discussing prejudice to a defendant in the excusable neglect context. In so doing, the court is fully cognizant that "[l]ack of prejudice *by itself* is not sufficient to establish good cause." United States v. 2,164 Watches, More or Less, Bearing a Registered Trademark of Guess?, Inc., 366 F.3d 776, 773 n. 2 (9th Cir. 2004) (citation omitted) (emphasis in original).

Prejudice to defendants "requires greater harm than simply that relief would delay resolution of the case." Lemoge, 587 F.3d at 1196 (citations omitted). Allowing plaintiff an extension of time to serve would mean that defendants "would have lost a quick victory," which they would obtain if this court were to dismiss this action for failure to timely serve. See Bateman, 231 F.3d at 1225. The loss of such a quick victory is not sufficiently prejudicial to deny relief, however. See id. Further, "[m]erely being forced to litigate on the merits is not prejudicial in this context[,]" where, as explained below, there is far greater prejudice to plaintiff Trueman because it appears that the statute

-7-

of limitations would bar re-filing. See In re Beck, 2011 WL 4623937, at *4 (Bankr.D.Ariz. Sept. 29, 2011)(citing Lemoge, 587 F.3d at 1196). Thus, any prejudice to the defendants here is relatively minor.

### *C. Severe Prejudice to Plaintiff*

The third good cause factor – severe prejudice to plaintiff upon dismissal of his complaint – weighs heavily in plaintiff Trueman's favor. "A dismissal for untimely service is required to be a dismissal without prejudice." 2,164 Watches, 366 F.3d at 773 (citation omitted); see also Fed. R. Civ. P. 4(m). "Such a dismissal ordinarily enables the plaintiff to refile the complaint and effect timely service." Id. In the present case, however, a dismissal without prejudice would severely prejudice plaintiff because it appears that the statute of limitations would bar his section 1983 claim.

In a section 1983 action such as this, the applicable statute of limitations "is the personal injury statute of limitations of the state in which the cause of action arose." Alamed Books, Inc. v. City of Los Angeles, 631 F.3d 1031, 1041 (9th Cir. 2011) (citing, *inter alia*, Wallace v. Kato, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)). Arizona has a two year statute of limitations for personal injury claims. Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 974 (9th Cir. 2004) (citing, *inter alia*, Ariz.Rev.Stat. § 12-542). Because plaintiff Trueman's section 1983 claim accrued on December 6, 2007,[2] borrowing that Arizona statute

---

[2] State law provides the applicable statute of limitations in a section 1983 action, but "[f]ederal law . . . governs when [that] claim accrues." Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1996) (citation omitted). A section 1983 claim "accrues when the plaintiff knows, or should know, of the injury which is the basis

- 8 -

of limitations, it appears that dismissal of this case for failure to serve would prevent him from re-filing this action. That inability to re-file constitutes severe prejudice to plaintiff Trueman, which, in turn, weighs in favor of a finding of good cause. See Quinn v. Cornerstone Strategic Advisors, L.L.C., 2007 WL 2462112, at *6 (S.D.Cal. Aug. 27, 2007) (severe prejudice shown, supporting good cause, where plaintiff would be "severely prejudiced if motion [to dismiss for failure to timely serve] is granted because a significant portion of his claims will be [time] barred[]"); see also Alamzad v. Lufthansa Consulting GMBH, 2005 WL 1869400, at *3 (N.D.Cal. Aug. 4, 2005) (good cause existed to extend plaintiff's time for service because, *inter alia*, plaintiff would suffer severe prejudice by dismissal given that "the statutes of limitations appear to have expired[]").

After focusing on the three other factors pertinent to a finding of good cause (and again assuming excusable neglect), it is a close call as to whether good cause has been shown here, so as to "force a mandatory extension of time" to serve defendants under Rule 4(m). See Golf Savings, 2010 WL 3222112, at *3. Dismissal would result in severe prejudice to plaintiff Trueman, and there is no readily apparent prejudice to defendants. Nonetheless, given defendants' lack of actual notice of this lawsuit, erring on the side of caution, this court cannot find that good cause exists, so as to justify a mandatory extension of time under Rule 4(m). That

---

of [his] cause of action." Id. (citation omitted). Here, as the FAC details, plaintiff Trueman was aware on December 6, 2007, that he had slipped on an allegedly wet floor and purportedly sustained back injuries as a result. His section 1983 cause of action therefore accrued on that date. The two year statute of limitations thus expired two years later, on approximately December 6, 2009.

does not end the court's inquiry, however.

## *II. Discretionary Extension of Time to Serve*

In the absence of good cause, the court must proceed to the second step of the analysis, and decide whether, in its discretion, to extend the prescribed time for service of the FAC. "The Ninth Circuit has declined to "articulate a specific test that a court must apply in exercising its discretion under Rule 4(m)[,]" noting "that, under the terms of the rule, the court's discretion is broad." Gill v. Waikiki Lanai, Inc., 2011 WL 3648772, at *7 (D.Hawai'i Aug. 18, 2011) (quoting In re Sheehan, 253 F.3d at 513 (citation omitted)). In part, that broad discretion derives from the fact that Rule 4(m)'s 120-day time frame for service "operates not as an outer limit subject to reduction, but as an irreducible allowance." Henderson v. United States, 517 U.S. 654, 661, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) (internal quotation marks and citation omitted). "On its face, Rule 4(m) does not tie the hands of the district court after the 120-day period has expired. Rather, Rule 4(m) explicitly permits a district court to grant an extension of time to serve the complaint *after* that 120-day period." Efaw v. Williams, 473 F.3d 1038, 1041 (9th Cir. 2007) (quoting Mann v. Am. Airlines, 324 F.3d 1088, 1090 (9th Cir. 2003) (emphasis added by Mann court)).

A court's discretion under Rule 4(m) is not "limitless[,]" however. Id. It must be predicated upon a finding of excusable neglect. See Lemoge, 587 F.3d at 1197 (citation omitted) (emphasis added) ("[I]f good cause is not established, the district court *may* extend time for service upon a *showing* of *excusable neglect*."). "To determine whether a party's failure to meet a deadline

- 10 -

constitutes 'excusable neglect,' courts must apply a four-factor equitable test[]" based upon <u>Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd.</u>, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); and <u>Briones v. Riviera Hotel & Casino</u>, 116 F.3d 379, 381 (9th Cir. 1997). <u>Ahanchian v. Xenon Pictures, Inc.</u>, 624 F.3d 1253, 1261 (9th Cir. 2010) (citations omitted). <u>Pioneer</u> involved excusable neglect under Federal Rule of Bankruptcy Procedure 9006(b), and <u>Briones</u> involved a Rule 60(b) motion for relief from judgment. The Ninth Circuit applies the <u>Pioneer/Briones</u> factors in a variety of contexts, though, including in deciding whether excusable neglect has been shown under Rule 4(m). See <u>Lemoge</u>, 587 F.3d at 1198.

That four factor equitable test requires, at a minimum, examination of: "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." <u>Ahanchian</u>, 624 F.3d at 1261 (citations omitted). Those four enumerated factors are "not an exclusive list[,]" however. <u>Lemoge</u>, 587 F.3d at 1195 (internal quotation marks and citation omitted). "In some circumstances, the prejudice a denial would cause to the movant must also be considered, but it is not a fact that must be assessed in each and every case." <u>S.E.C. v. Platforms Wireless Int'l Corp.</u>, 617 F.3d 1072, 1092 (9th Cir. 2010) (internal quotation marks and citation omitted). Thus, "what sorts of neglect will be considered 'excusable' . . . is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." <u>Pioneer</u>, 507 U.S. at 395.

Mindful that "a district court abuses its discretion if it

does not consider each of the four *Pioneer* factors separately[,]" PLU Investments, 2011 WL 1376192, at *2 (citing, *inter alia*, Ahanchian, 624 F.3d at 1261), this court will proceed in exactly that way. In so doing, the court is keenly aware that while "balancing the *Pioneer/Briones* factors[,]" it "may not apply per se rules." See Ahanchian, 624 F.3d at 1261 (citation omitted).

### ***A. Pioneer/Briones Factors***

#### ***1. Prejudice to Opposing Party***

Here, any prejudice to the defendants is relatively minimal, as already discussed. Additionally, it is noteworthy that "losing the benefit of [the] expiration of the statute of limitations" does "not constitute prejudice within the meaning of Fed.R.Civ.P. 4(m)." Alamzad, 2005 WL 1869400, at *2 (citing Boley v. Kaymark, 123 F.3d 756, 758 (3rd Cir. 1997)). "While not binding in the Ninth Circuit," this court agrees that "*Boley* is persuasive authority for the proposition that the running of the statute of limitations period does not assist" defendants in this equitable analysis. See id. Rather, the lack of prejudice to defendants tips decidedly in favor plaintiff, especially when contrasted to the severe prejudice he is likely to sustain absent an extension of time for service.

#### ***2. Length of Delay and Impact***

The second Pioneer/Briones factor, too, supports a finding of excusable neglect. Pursuant to Rule 4(m), initially plaintiff had until roughly December 14, 2010, in which to serve his FAC. Later, plaintiff was granted an extension for time to serve until February 16, 2011. Defendants have yet to be served though. While not inconsequential, given the procedural posture of this case and

mindful of plaintiff's *pro se* status,[3] the length of delay and its impact upon this litigation, also favors plaintiff.

First, admittedly granting an extension of time to serve would cause further delay, but this action is in its infancy. It thus stands in sharp contrast to, for example, <u>Khalafala v. Crowther</u>, 2011 WL 5974627 (D.Ariz. Oct. 26, 2011), <u>adopted</u>, 2011 WL 5974537 (D.Ariz. Nov. 29, 2011); and <u>Halloum v. Ryan</u>, 2011 WL 5572622 (D.Ariz. Sept. 21, 2011), <u>adopted</u>, 2011 WL 557206 (D.Ariz. Nov. 6, 2011), where granting an extension of time in which to serve new defendants augured against a finding of excusable neglect. In both of those cases, unlike here, granting such an extension would have meant "resetting the schedule[s]" in cases "nearing completion." <u>Khalafala</u>, 2011 WL 5974627, at *3; <u>Halloum</u>, 2011 WL 5572622, at *2. No scheduling orders for discovery or motion practice have been entered in this case, much less such "deadlines [which] are about to expire[.]" See <u>Halloum</u>, 2011 WL 5572622, at *2 (citation omitted).

Additionally, another significant difference between <u>Khalafala</u> and <u>Halloum</u> and the present action is that it has not been proceeding apace with other served defendants. Any further delay thus is unlikely to substantially impact this litigation. Accordingly, the court finds that the length of delay, particularly when coupled with the minimal impact upon this proceeding, supports a finding of excusable neglect. Contra <u>Efaw</u>, 473 F.3d at 1041 (abuse of discretion to grant inmate plaintiff, who "was

---

[3] Of course, that status does not excuse plaintiff from "follow[ing] the same rules of procedure that govern other litigants." <u>King v. Atiyeh</u>, 814 F.2d 5856, 567 (9th Cir. 1987) (citation omitted).

- 13 -

represented by counsel for a significant portion of the seven years," extension of time in which to serve defendant guards where "the length of the delay was extraordinary[]" – seven years); Quinn, 2007 WL 2462112, at *7 (declining to grant discretionary extension of time because, *inter alia*, plaintiff did not effect service until nearly three years after filing of the complaint).

### *3. Reason for Delay*

Evidently the reason for the delay in service is that this *pro se* inmate plaintiff has been unable to locate defendants. Plaintiff did undertake one effort to ascertain defendants' whereabouts when, on January 4, 2011, he filed a motion to compel their names and addresses. Plaintiff could have been more diligent in pursuing defendants' addresses through discovery. So although plaintiff's inability to locate defendants is a "reason" for delay, that reason does not support a finding of excusable neglect taking into account all of the Pioneer/Briones factors and other relevant considerations.

### *4. Good Faith*

Turning to the fourth Pioneer/Briones factor, there is no basis for concluding that plaintiff acted in bad faith, or was engaging in gamesmanship, as opposed to simply being dilatory. Therefore, this factor likewise favors plaintiff.

### *5. Severe Prejudice to Plaintiff*

As explained in discussing good cause, dismissing the FAC now would, it appears, mean that the statute of limitations bars re-filing. Under these circumstances, the Ninth Circuit has "expanded the scope of the 'prejudice' inquiry when conducting analysis under Rule 4(m) to include the prejudice that would be suffered by a

plaintiff in the event of a dismissal for failure to timely serve[.]" Lemoge, 587 F.3d at 1195. Indeed, the Ninth Circuit has expressly recognized that "[t]he district court's discretion is not diminished when the statute of limitations would bar re-filing of the suit if the district court decided to dismiss the case instead of grant an extension." Mann, 324 F.3d at 1090. "To the contrary, the advisory committee notes explicitly contemplate that a district court might use its discretion to grant an extension in that very situation: 'Relief may be justified, for example, if the applicable statute of limitations would bar the re-filed action.'" Id. at 1090-91 (quoting Fed.R.Civ.P. 4, Advisory Committee Note to 1993 Amendments, Subdivision (m)); see also De Tie v. Orange Cty., 152 F.3d 1109, 1111 n. 5 (9th Cir. 1998) (recognizing that an extension may be warranted if the statute of limitations has run).

In fact, the Ninth Circuit has found that plaintiffs sustained "the ultimate prejudice of being forever barred from pursuing their claims[,]" absent a Rule 4(m) "because the statute of limitations on their claim ha[d] run." Lemoge, 587 F.3d at 1197. Absent an extension of time to serve, plaintiff Trueman will suffer that same "ultimate prejudice" because presumptively, at this juncture, the two year statute of limitations has run on his section 1983 claim. Consequently, although "[a] dismissal for untimely service is required to be . . . without prejudice[,]" 2,164 Watches, 366 F.3d at 773 (citation omitted), "[t]hat purpose would be frustrated" where, as here, evidently "the statute of limitations has already run[]" because "a dismissal intended to be without prejudice under Rule 4(m) would essentially be with prejudice." See Carrillo v. Internal Revenue Service, 2006 WL 167558, at *4 (D.Ariz. Jan. 24,

2006) (citing, *inter alia*, 2,164 Watches, 366 F.3d at 773).  Thus, "a Rule 4(m) dismissal would effectively cut off Plaintiff's right to redress."  Id.

The concern that the statute of limitations is a bar to refiling in this case arguably carries even more weight given that "the public policy favoring resolution on the merits is 'particularly important in civil rights cases[]'" such as this section 1983 action.  See Hernandez v. City of El Monte, 138 F.3d 393, 401 (9th Cir. 1998) (quoting Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987)).  As is abundantly clear, dismissing the FAC for failure to timely serve pursuant to Rule 4(m) would result in not only "severe prejudice" to plaintiff Trueman, but in the words of the Ninth Circuit, he would sustain "the ultimate prejudice[.]" See Lemoge, 587 F.3d at 1196.  Therefore this aspect of the prejudice inquiry heavily weighs in favor of a finding of excusable neglect.

Balancing the equities in light of the four explicit Pioneer/Briones factors, only one – the reason for delay, does not support a finding of excusable neglect.  The other three factors, particularly when coupled with the severe prejudice to plaintiff, convince the court, in the exercise of its discretion, to grant plaintiff Trueman an extension of time in which to serve defendants pursuant to Fed. R. Civ. P. 4.  That extension is not without limits, however.

The court is fully aware that plaintiff is incarcerated and proceeding *pro se*.  It remains his responsibility, however, to provide the United States Marshal with accurate and sufficient information to effect service.  See Boulware v. Ervin, 2010 WL

5110445, at *1 (E.D.Cal. Dec. 8, 2010)("[I]t is ultimately [P]laintiff's responsibility to provide a name and address for each defendant to be served in order for the Court to direct the Marshal to serve process on a defendant.") (internal quotation and citations omitted); see also Walker v. Sumner, 14 F.3d 1415, 1422 (9th Cir. 1994), overruled on other grounds by Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (requiring a pro se prisoner plaintiff to have "furnished the information necessary to identify the defendant") (internal citation omitted).

To that end, plaintiff is not precluded from attempting to ascertain the full names and also the addresses of defendants Unknown Avena, Jason Johnson, and Unknown Molina through discovery. The court therefore grants plaintiff the opportunity to conduct discovery for the limited purpose of ascertaining the foregoing information. Plaintiff shall have **sixty (60) days** from the date of this order in which to complete that discovery. Within that sixty day time frame plaintiff shall file with the court a notice indicating either: (1) that he has ascertained the names of defendants and their addresses; (2) or that he has not. Once plaintiff provides the names and addresses to the court for service, the court shall issue an order directing service. If plaintiff does not comply with that time frame, this case shall be dismissed "without prejudice," subject to any statute of limitations defense. The court expects full and complete compliance with this order, as well as all court orders going forward, and cautions plaintiff that it will not allow any further extensions of time in which to serve defendants.

. . .

**IT IS HEREBY ORDERED** that pursuant to Fed.R.Civ.P. 4(m), plaintiff is **GRANTED sixty (60) days** from the date of this Order in which to conduct discovery as to the names and addresses of defendants Unknown Avena, Jason Johnson and Unknown Molina, and to provide written notice to this court as to the foregoing, or that plaintiff was unable to discover that information.

DATED this 21st day of December, 2011.

_____
Robert C. Broomfield
Senior United States District Judge

Copies to plaintiff *pro se* and counsel of record